UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Case No. 5:21-cr-00125-GFVT-MAS-1 |
| v. | ) ) | |
| KARMIT ARNOLD BANKS, | ) ) | **MEMORANDUM OPINION** **&** |
| Defendant. | ) | **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Report and Recommendation filed by United States Magistrate Judge Matthew A. Stinnett. [R. 36.] Defendant Karmit Arnold Banks has been charged with violating 21 U.S.C. § 841(a)(1) for possession with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and a 21 U.S.C § 851 enhancement. [R. 10.]

On December 29, 2021, Mr. Banks filed a motion to suppress evidence that was obtained during a traffic stop that gave rise to this litigation, arguing that the stop and subsequent detention and warrantless search were unlawful. [R. 26.] Following a suppression hearing, Judge Stinnett recommended that the Court deny Mr. Banks's suppression motion, finding that the *Terry* stop was valid, the trooper's error in entering the license plate number was merely negligent, the extension of the *Terry* stop was reasonable, and that the trooper was sufficiently credible. [R. 36.] For the reasons that follow, Judge Stinnett's Report and Recommendation will be **ADOPTED** and Mr. Banks's objections will be **OVERRULED**.

**I**

On the morning of September 23, 2021, Kentucky State Police troopers Jack Gabriel and Michael King, who were assigned to the Appalachian Narcotics Interdiction Unit, were parked in marked KSP cruisers in the median on I-75 in Madison County, Kentucky. [R. 35 at 26; R. 36 at 1; R. 38-1 at 2.] From where Troopers Gabriel and King were situated, they could see oncoming southbound traffic for approximately one-quarter of a mile and traveling vehicles could also see them for approximately that same distance. [R. 36 at 2.] Troopers Gabriel and King both testified that they observed a black Chevrolet pass that was following too closely to the vehicle in front of him, which is a violation of state law. [*Id.*; *see also* R. 38-1 at 5.] Trooper Gabriel specifically testified that he saw the vehicle "traveling less than two car lengths from the vehicle in front of it" down the interstate, and Trooper King testified that he "observed a vehicle following another vehicle too closely." [R. 35 at 7, 76.] The officers further testified that the driver of the vehicle, Karmit Arnold Banks, was leaned back behind the "B" pillar, which is the pillar between the front door and the rear door. [R. 36 at 2.] The officers testified that after observing this behavior, they made eye contact with each other and then both pulled out onto I-75 to follow the vehicle. *Id.*

Trooper Gabriel inputted the vehicle's tags through his cruiser's computer system while he was following Mr. Banks's black Chevrolet, and the system returned a result for a silver Mercedes. *Id.* The troopers then effectuated a stop on Mr. Banks's vehicle. *Id.* After Trooper Gabriel's body worn camera, internal cruiser cameras, and dash cam were activated, he approached the driver's side of the vehicle and told Mr. Banks that he had pulled the vehicle over because there was a license plate discrepancy. *Id.* Trooper Gabriel took Mr. Banks's identification and the identification of the vehicle's passenger, Tyqueas Banks (Karmit Banks's

2

counsin), and asked them about the nature of their travel that day. *Id.* Trooper Gabriel testified that he detected the odor of marijuana emanating from the vehicle when he approached the driver's window, but he did not tell Mr. Banks that he smelled marijuana at that time. *Id.*

After receiving the identification, Trooper Gabriel returned to his cruiser accompanied by Trooper King. *Id.* Trooper Gabriel testified that he believed both men, particularly Tyqueas, exhibited nervous behavior before and during the top, and this raised his suspicion that criminal activity was afoot. *Id.* After review, Trooper King told Trooper Gabriel that he had made an error in imputing the license plate number into the system. After putting in the correct identifiers, the officers confirmed that neither individual had outstanding warrants and there was no issue with the Chevrolet's license plate. *Id.* at 3. However, Trooper Gabriel stated, "they're both nervous and it smells like weed a little bit…" [*Id.* (citing R. 34 ex. 1).] Trooper Gabriel then proceeded to turn his body worn camera and the cameras inside his cruiser off for nearly two minutes. *Id.* Trooper Gabriel's dash cam shows that Trooper Gabriel reapproaches Mr. Banks, briefly speaks to him, and then directs Mr. Banks out of the vehicle and onto the grass close to Trooper King. *Id.* When Trooper Gabriel turns his body worn camera back on, Mr. Banks is already standing by Trooper King, and Mr. Banks can be heard saying, "we smoked a little bit." [*Id.* (citing R. 34 ex. 2 at 0:00-04).] Mr. Banks then gave the officers a verbal consent to search the vehicle,[1] after which Tyqueas is asked to exit the vehicle and Trooper Gabriel conducts a brief search of the vehicle. *Id.* During the search, Trooper Gabriel found the heroin and fentanyl mixture that formed the basis of this case. *Id.*

---

[1] The validity of the consent is disputed, and this issue was not fully developed in the briefing or hearing before Judge Stinnett. However, the Court agrees with Judge Stinnett that settled case law permits an officer to search a vehicle during a traffic stop if the officer smells a controlled substance. [R. 36 at 8.] Therefore, the Court need not reach the issue of whether Mr. Banks gave valid consent.

Mr. Banks filed a motion to suppress on December 29, and the United States responded on January 12, 2022. [R. 26; R. 29.] Judge Stinnett held a suppression hearing and subsequently filed a Recommended Disposition on February 23, 2022. [R. 36.] On March 8, Mr. Banks objected to the Recommended Disposition, and he submitted an Amended Objection to the Recommended Disposition on March 9. [R. 37; R. 38.] This Court will make a *de novo* determination of those portions of the Recommended Disposition to which objections were made. 28 U.S.C. § 636(b)(1)(C).

## II

### A

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly, describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. For Fourth Amendment purposes, a traffic stop "constitutes a seizure of persons." *Whren v. United States*, 517 U.S. 806, 809–10 (1996) (internal citations omitted). A law enforcement officer may initiate a traffic stop when he "possesses either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012); *see also Terry v. Ohio*, 392 U.S. 1, 9 (1968). Reasonable suspicion is based on the totality of the circumstances and is present when a police officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011) (quoting *U.S. v. Cortez*, 449 U.S. 411, 417–18 (1981)).

### B

Mr. Banks objected to Judge Stinnett's findings related to (1) the lawfulness of the initial stop; (2) Trooper Gabriel's mistake in entering the vehicle's license plate information; (3) the

"continued detention" after the troopers realized the license plate error; and (4) Trooper Gabriel's credibility. [R. 38-1.] Each issue will be addressed below.

1

The first issue is whether the initial stop was lawful. In his Recommended Disposition, Judge Stinnett found that the *Terry* stop was valid because the officers "explained numerous factors that raised their suspicion of Banks's vehicle as it passed, including following closely to the vehicle in front of it and Banks's body position in the vehicle." [R. 36 at 4.] Furthermore, Judge Stinnett found Trooper Gabriel's true motivation for stopping Mr. Banks was irrelevant given the traffic violation. *Id.*

Mr. Banks objected to Judge Stinnett's finding, arguing that the record does not support Trooper Gabriel's claims that he pulled over Mr. Banks because he was following too closely behind another vehicle. [R. 38-1 at 5.] Mr. Banks argues that the "claim that drug traffickers routinely tuck in behind vehicles in front of them" is "absurd" and that Trooper Gabriel's testimony regarding the "estimate of car lengths" between Mr. Banks and the car in front was inconsistent. *Id.* Furthermore, Mr. Banks argues that it is telling that Trooper Gabriel failed to mention that Mr. Banks was following the vehicle in front of him too closely when he told Mr. Banks why he pulled him over. *Id.* at 5–6.

After review, the Court finds that Mr. Banks's claims are without merit. The record indicates that the troopers had multiple reasons to lawfully instigate the stop. Both Trooper Gabriel and Trooper King testified that they observed Mr. Banks following too closely to the vehicle in front of him.[2] [R. 36 at 2.] Furthermore, both troopers testified that Mr. Banks's

---

[2] Trooper Gabriel's testimony contained inconsistencies regarding the estimate of car lengths between Mr. Banks's vehicle and the vehicle in front of him. He testified that there were approximately two car lengths between the vehicles, but he then admitted that he had not included that estimate in his report. [R. 35 at 32.] However, Trooper

5

position in the vehicle indicated an evasive measure.  *Id.*  The license plate number returning a result for a silver Mercedes instead of a black Chevrolet, though the number was inadvertently entered incorrectly, provided another reason for the troopers to lawfully stop Mr. Banks.  *See Von Herbert v. City of St. Clair Shores*, 61 F. App'x 133, 142 n.5 (6th Cir. 2003) ("Even a *mistaken* premise can justify a reasonable suspicion, if the officer's belief in that premise was reasonable and in good faith, and, if true, would authorize a *Terry* stop." (citing *Houston v. Clark Cnty. Sheriff Deputy John Does 1–5*, 174 F.3d 809, 814 (6th Cir. 1999)) (emphasis in original).

All of these reasons were more than sufficient to provide the troopers with "probable cause of a civil infraction or reasonable suspicion of criminal activity."  *Lyons*, 687 F.3d at 763.  Furthermore, to the extent that Trooper Gabriel was part of a drug task force "looking for reasons to make traffic stops and investigate illegal narcotic activity" [R. 38-1 at 2] and withheld from Mr. Banks some of the reasons for pulling him over, "[i]f there is probable cause to believe a traffic violation had occurred, the officer's actual motivation is immaterial."  *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006) (citing *Whren*, 517 U.S. at 809–10); *see also United States v. Collazo*, 818 F.3d 247, 253 (6th Cir. 2016) ("The subjective intent of the officer making the stop is irrelevant in determining whether the stop violated the defendant's Fourth Amendment rights.").  Accordingly, the Court finds that the initial stop was valid, and Mr. Banks's objections are overruled.

---

Gabriel's testimony that Mr. Banks was following the vehicle in front of him too closely is corroborated by Trooper King's testimony, and the only evidence to the contrary was Tyqueas's testimony that he was one hundred percent certain Mr. Banks was not following any cars too closely.  *Id.* at 96.  However, Tyqueas also admitted he was distracted by a conversation he was having with his cousin.  *Id.* 109.  After reviewing the evidence, the Court finds Trooper Gabriel's testimony to be sufficiently credible on the issue of whether Mr. Banks was following too closely behind the vehicle in front of him.

2

The next issue is Trooper Gabriel's error in reading and entering Mr. Banks's license plate number. While Trooper Gabriel was following Mr. Banks on the interstate, he entered the vehicle's license plate number, except that he entered the license plate number as "CMV9294" instead of "CMY9294." [R. 29 at 2–3.] Judge Stinnett found that the error constituted nothing more "than a data-entry error that he immediately corrected when Trooper King pointed it out to him" and did not constitute recklessness or gross negligence. [R. 36 at 6.] Mr. Banks disagreed, arguing that the mistake was "at a *minimum*, reckless and recurring" because Trooper Gabriel admitted that this is a mistake he has made "plenty of times." [R. 38-1 at 5.]

The Supreme Court has held that where "police personnel are responsible for [an] unconstitutional error, suppression is necessary only if the police conduct is deliberate, reckless, or grossly negligent…, or in some circumstances [due to] recurring or systemic negligence." *United States v. Godfrey*, 427 F. App'x 409, 411 (6th Cir. 2011) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)) (second bracket in original). In *Godfrey*, which all the parties cite, a police officer made a similar typographical mistake while following a vehicle in traffic. 427 F. App'x at 412. There, the Sixth Circuit agreed with the district court in finding that the officer's "initial data-entry error was a mistake and at most constituted typical negligence." *Id.* at 412. Furthermore, the Sixth Circuit held that "[a]ccidental typographical mistakes are not the sort of police behavior that suppression would deter, so the exclusionary rule des not require suppression for this error." *Id.*

Here, the conduct by Trooper Gabriel does not indicate that it constituted reckless or deliberate behavior. There is no evidence that Trooper Gabriel intentionally entered the wrong license plate number into the computer system. In fact, the record does not reflect that this was

7

anything more than Trooper Gabriel merely mistyping the license plate number by one digit as he drove down the interstate. The Court is also not persuaded that Trooper Gabriel's admission that he had entered license plate numbers incorrectly into his cruiser's computer system multiple times during his approximately twelve-year career as a trooper constitutes systemic negligence. Systemic negligence is more likely to come up in a context that is more recurring and widespread than at issue in this case. *See United States v. Martinez*, 686 F. Supp. 2d 1161, 1205 (D.N.M. 2009) (finding recurring or systemic negligence where "the testimony disclosed that misapplication of the exigent-circumstances standard is recurring and not limited to the officers involved in this case") (citing *Herring*, 555 U.S. at 144). Accordingly, the Court will overrule Mr. Banks's objections regarding Trooper Gabriel's error in reading and entering Mr. Banks's license plate number.

## 3

The next issue is whether the stop was unreasonably prolonged and whether the scope of the stop was improperly exceeded when Troopers Gabriel and King realized the license plate mistake. Judge Stinnett found that the stop was not unreasonably prolonged for two reasons: (1) because Trooper Gabriel detected the odor of marijuana prior to recognizing his license plate error and before resolving the possible citation for following the vehicle too closely; and (2) because the time from Mr. Banks being pulled over until Trooper Gabriel discovered the heroin/fentanyl mixture was only about seven minutes. [R. 36 at 6–7.]

Mr. Banks objected to Judge Stinnett's findings, primarily arguing that if it were true that Trooper Gabriel smelled marijuana, he would "have immediately confronted Mr. Banks with that fact, order[ed] him out of the vehicle, and proceed[ed] to search the car," instead of not mentioning the marijuana until after discovering the license plate mistake. [R. 38-1 at 6.]

8

Furthermore, Mr. Banks asks the Court to reject Trooper Gabriel's plain smell claim for the following reasons: (1) the small amount of marijuana was unburnt, which does not smell as strong as burnt marijuana; (2) Trooper King did not corroborate Trooper Gabriel's marijuana smell claim; (3) Mr. Banks's cousin Tyqueas was smoking a cigarette, which would have masked the marijuana smell; (4) Trooper King testified that he could not tell that Tyqueas was under the influence of marijuana; and (5) Trooper Gabriel did not mention the smell until after discovering the license plate mistake. *Id.*

After review, the Court finds that Mr. Banks's arguments are without merit. Mr. Banks has not proffered any evidence, nor can he, that Trooper Gabriel was required to confront Mr. Banks about the marijuana smell before attempting to resolve the other issues that initiated the traffic stop. Also, the fact that Tyqueas was smoking a cigarette, and that the small amount of marijuana in the vehicle was unburnt, does not mean that a trained narcotics officer such as Trooper Gabriel would not be able to smell marijuana in the vehicle, particularly given the fact that both Mr. Banks and Tyqueas subsequently admitted that they had smoked marijuana earlier in the day. [R. 35 at 22, 79–80, 113.] Additionally, the fact that Trooper King failed to corroborate Trooper Gabriel's claim of smelling marijuana is understandable because he did not approach Mr. Banks's vehicle with Trooper Gabriel. Trooper King testified that while Trooper Gabriel approached Mr. Banks's vehicle, "I was standing outside of my vehicle." *Id.* at 79.

Furthermore, Trooper Gabriel's testimony that he was looking for reasons to stop motorists and investigate narcotics activity does not mitigate his testimony that he smelled marijuana when he walked up to the car. The Sixth Circuit has consistently held that "an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search." *United States v. Grayer*, 2021 WL 3813198, at *3 (6th Cir. Aug. 26, 2021)

9

(quoting *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002)); *United States v. Hall*, 20 F.4th 1085, 1099 (6th Cir. 2022). Therefore, despite the license plate mistake, detecting the smell of marijuana provided probable cause for a search, which would also prolong the stop.

As for the length of the traffic stop, "there is no rigid time limitation on the lawfulness of a *Terry* stop." *United States v, Davis*, 430 F.3d 345, 354 (6th Cir. 2005). The evidence indicates that the troopers were diligently pursuing the investigation in this case. *See Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). The length of the stop, from the time Mr. Banks was pulled over until Trooper Gabriel discovered the heroin/fentanyl mixture in the backseat, was approximately seven minutes. [R. 36 at 7.] The time it took Mr. Banks to stop his vehicle to the time Mr. Banks approached his vehicle the second time (after discovering the license plate error and having a two-minute discussion with Trooper King) was approximately four and a half minutes. *Id.* The remaining time was spent finding the contraband in the vehicle. Therefore, at most, the stop was extended by two minutes while Troopers Gabriel and King talked while Trooper Gabriel's body worn camera was turned off. The Court does not find the seven-minute stop to have been unreasonably prolonged and will overrule Mr. Banks's objections.

### 4

Finally, Mr. Banks objects to Judge Stinnett's finding as to Trooper Gabriel's credibility.[3] [R. 38-1 at 1, 4, 7.] In his Recommended Disposition, Judge Stinnett found that

---

[3] The Court notes that Trooper Gabriel's testimony contained numerous inconsistencies, as previously noted by Judge Stinnett. [R. 36 at 9.] Furthermore, the Court is aware that Trooper Gabriel has been involved in civil lawsuits and disciplinary actions, including two allegations of racially motivated use of force. [R. 35 at 72–73; R. 36 at 9; R. 38-1 at 7.] This Court echoes Judge Stinnett's observation that "[e]xcessive force by police officers, particularly when used against people of color, is an abhorrent example of policing at its worst and besmirches the reputation of the entire law enforcement and criminal justice system." [R. 36 at 9.] However, the narrow focus here is whether Trooper Gabriel's testimony was sufficiently credible as to the matters of whether Mr. Banks was

although Trooper Gabriel "did not testify credibly on every point, he did testify credibly" as to his observation that Mr. Banks was following too closely to the vehicle in front of him and whether he detected the odor of marijuana in the vehicle. [R. 36 at 11.] The Court agrees. Trooper Gabriel's observation of Mr. Banks following too closely was corroborated by Trooper King [R. 35 at 76], and Trooper Gabriel's detection of the odor of marijuana was corroborated by Mr. Banks as well as the presence of marijuana in the vehicle. *See United States v. Rounsaville*, 2018 WL 4909903, at *8 (E.D. Tenn. Oct. 10, 2018) (finding that discovery of marijuana nearby subsequent to officer smelling it bolsters officer's testimony); *United States v. Davis*, 2020 WL 354628, at *5 (S.D. W. Va. Jan. 21, 2020) (same). Accordingly, the Court will overrule Mr. Banks's objections as to Trooper Gabriel's credibility.

### III

Accordingly, the court being duly and sufficiently advised, it is hereby **ORDERED** as follows:

1. The Report and Recommendation [**R. 36**] as to Defendant Karmit Arnold Banks is **ADOPTED** as and for the Opinion of the Court;

2. Defendant Karmit Arnold Bank's Objections are **OVERRULED**; and

3. Defendant Karmit Arnold Banks's motion to suppress **[R. 26]** is **DENIED**.

This the 30th day of March, 2022.

---

following too closely to the vehicle in front of him and whether Trooper Gabriel detected the odor of marijuana in the vehicle.

Gregory F. Van Tatenhove
United States District Judge

12